### Collison *v.* Curtner.

### Opinion delivered December 8, 1919.

1. MASTER AND SERVANT—INJURIES TO THIRD PERSON—INDEPENDENT CONTRACTOR.—Where a lease of a cotton gin bound the lessee to to pay rent and keep the gin running and to be responsible for damages, but required the lessor to "furnish all repairs necessessary for the successful operation of the plant," the lessor is bound not only to furnish material for repairs but also to make them, and he can not escape liability for injury to third persons resulting from an explosion caused by the defective condition of a boiler.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE.—In an action for injury by the explosion of the boiler of a cotton gin, evidence of a custom to enter the boiler room to obtain information was competent on the issue as to whether plaintiff was a trespasser or was guilty of contributory negligence.

3. NEGLIGENCE—EVIDENCE.—In an action for injuries from the blowing out of a plug in a boiler, testimony that, on the next morning after the injuries were received, the threads in the boiler where the plug was set in were badly worn was competent to show the real condition at the time of the accident.

4. NEGLIGENCE—EVIDENCE.—So likewise the condition of the boiler fifteen days after the accident was competent where it does not appear that it was in a different condition from what it was in immediately after the injury.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Brundidge & Neelly* and *Cul L. Pearce* for appellant.

1. Appellant's request for a peremptory instruction should have been given, as the undisputed testimony shows that at the time of the accident appellant had leased the gin to Ledgerwood, who was operating the same as an independent contractor, and appellant had no control or management of same, nor did he hire or discharge the hands or give them any directions. 77 Ark. 553; 54 *Id.* 424; 55 *Id.* 510; Elliott on Railroads, art. 1063, p. 1586; Ann. Cases, 1916 D, 220; Ann. Cases, 1918 C, 624; 14 R. C. L. 473.

2. The relation between Collison and Ledgerwood is wholly in writing and the construction of same was for the court and not for the jury.

3. The court erred in giving instruction No. 1 for plaintiff. It was abstract and the testimony showed that defendant had leased the property and had no control or management of the same and it left out the question altogether whether or not under the contract Ledgerwood was an independent contractor. *Supra.*

4. Instruction No. 5 is open to the same objection.

5. No. 6 is erroneous because the jury are permitted to leave out of consideration the question whether plaintiff, David Curtner, who had control and charge of

the son and whose negligence would be imputed to plaintiff, was guilty of contributory negligence.

6. No. 7 is clearly erroneous, as it leaves out altogether the question of Ledgerwood being an independent contractor. Next it tells the jury that under the lease defendant agreed to furnish all repairs on the gin, when the testimony shows that he was to furnish such repairs as Ledgerwood might find necessary and make demand for suitable material to repair same, and that defendant had nothing to do with putting the machinery in condition and repairs prior to the commencement of operations of same for the season of 1918.

7. Instruction No. 9 is abstract, as there is no proof of the value of the child's services during minority.

8. No. 10 was specifically objected to because it told the jury that if they found for plaintiff under the second count they were to assess such damages as would compensate for the pain and suffering endured by the son, but there were no instructions given as to what fact they should find under the law before they could return a verdict for plaintiff under the second count.

9. The court erred in refusing No. 11 for defendant. It was a proper declaration of law on the question of independent contractor. For the same reason No. 12 should have been given.

10. No. 13 should have been given for defendant to cover the theory of defendant, as No. 7 for plaintiff had been given.

11. The court erred in permitting the witnesses, H. C. Pearrow and B. F. Mitchell, to testify as to the custom of people being around the engine and boiler room of the gin in 1916 and 1917, as well as 1918, as different parties were then operating the gin.

12. It was error to admit the testimony of J. W. Graham as to the condition of the plug and the conversation with defendant Collison after the accident and after the repairs of the boiler.

13. The court erred in permitting plaintiff to prove by P. J. Donohue the condition of the boiler after the

accident some fifteen days. 108 Ark. 489; 105 *Id.* 205; 151 S. W. 259; 70 Ark. 179; 78 *Id.* 148; 79 *Id.* 393; 89 *Id.* 556; 82 *Id.* 561; 48 *Id.* 460; 78 *Id.* 147. It was also error to admit the testimony of N. Miller, Ben Harrison and H. C. Pearrow as to the custom of customers going into the engine room for a drink of water. 108 Ark. 440; 48 *Id.* 177; 77 *Id.* 495.

*Pace, Seawel & Davis* and *G. G. McKay,* for appellee.

1. The request for a peremptory instruction was properly refused. A landlord in the absence of an express agreement is not required to repair the premises and is not responsible for its defective condition. 24 Cyc. 1128; 29 *Id.* 477; 18 A. & E. Enc. L. (2 Ed.), 241-2. See also 121 Ark. 253; 110 *Id.* 49. If the premises are dangerous at the time of the execution of the lease, the landlord is liable. 18 A. & E. Enc. L. (2 Ed.), 242.

2. All the testimony shows that it was the duty of appellant to repair the machinery and so does the lease. The boiler was defective and unsafe when the lease was made for 1918. Defendant and his child were lawfully on the premises and not trespassers but they were there by, at least, implied invitation. 29 Cyc. 455.

3. Instruction No. 1 for appellee was more favorable to appellant than the law warranted. There was ample testimony that the boiler threads were defective. The question as to an independent contractor could not be presented in this instruction and was foreign to the issues. Either appellant was the operator of the gin at the time of the accident or he was responsible under its terms, as the boiler was defective and dangerous when the lease was executed.

4. The objections against No. 5 can not be considered, as they are practically the same as those to No. 1, and the evidence fails to establish negligence at law or in fact on the part of appellee. If the boiler was defective at the time of the lease appellant was liable and no

contributory negligence is shown. This disposes of the objections to No. 6.

5. Instruction No. 7 for appellee is also too favorable to appellant. He was liable without regard to his agreement to furnish repairs. He was required to keep his machinery in a reasonably safe condition during the season of 1918.

6. Objections to Nos. 9 and 10 are without merit. The son was bright and healthy and did chores around the premises and elsewhere. The evidence justified them. Instruction No. 5 covers the question beyond controversy.

7. **Nos. 11 and 13 for** appellant were properly refused; they ignore the provisions of the lease requiring appellant to repair the machinery and omits the evidence that the boiler was dangerous and defective at the time of the alleged lease.

8. The evidence as to the custom of persons on the premises was competent. Appellee was there on business connected with the ginning of his cotton. The custom was well known and notorious and there was no error in admitting the evidence of Graham as to the condition of the boiler.

9. The jury found the issues for appellee under the law, and the testimony sustains it and the verdict is very small.

WOOD, J. On the 3rd of October, 1918, David Curtner, accompanied by his son, Woodrow Curtner, five years of age, drove a load of cotton to the gin of J. Collison at Bald Knob, Arkansas. While waiting to have the cotton ginned, Curtner and his son went into the boiler room of the gin, and while there a plug at the bottom of the boiler was blown out and Curtner and his son were scalded. The son died from the injuries received and David Curtner, in a separate action, in his own right, and as administrator of the estate of his son, instituted another action against the appellant to recover damages for the injury and death of the son.

The grounds of negligence set forth in the complaints are that Collison negligently and carelessly permitted the boiler to become and remain insecure and unsafe, in that the plug used by him to stop the blowpipe at the bottom of the boiler was too large for the opening, and when screwed into the opening only a few threads would catch; that the threads in the opening of the boiler were worn, some of them being entirely gone, making the plug insecure in the opening; that the plug blew out and permitted the steam and hot water to escape and burn the plaintiff below, appellee here, rendering him a cripple for life; that Collison at the time of and before the happening of the accident knew of, or in the exercise of ordinary care could have known of, the defective condition of the boiler and that such condition was wholly unknown to the appellee. The appellee then set forth minutely the nature of the injuries received.

The appellee alleged that he had suffered and that he will continue to suffer for the remainder of his life great pain of body and anguish of mind as a result of the injuries. That on account of his own personal injuries he had been damaged in the sum of $30,000, for which he asked judgment.

In the case of the appellee as administrator of the estate of his son he alleged the same grounds of negligence and set up that his son was injured by reason thereof and suffered great agony and finally died as the result of the negligence alleged.

He averred that the services of his minor son were worth to him the sum of $5,000 and that he should recover for the benefit of the estate in the sum of $15,000. He, therefore, prayed for judgment in the sum of $20,000.

In his answer the defendant, appellant here, denied all the material allegations of the complaint and set up as an affirmative defense that the gin where the accident happened had been rented by the appellant to one N. B. Ledgerwood, who at the time was in the exclusive possession, control, management, and operation of the same; that if the appellee and his son were injured their injuries were

caused by the appellee's going into the boiler room and taking his son without the invitation or permission of the appellant; that appellee knew or should have known that it was a dangerous place and was a trespasser, and was therefore guilty of contributory negligence.

The allegations of the answer in the case of the appellee as administrator of the estate of his son were substantially the same. In that case the appellant charged that the appellee was guilty of contributory negligence in taking his son into a dangerous place and allowing him to remain there.

The causes were consolidated for the trial.

Appellant first contends that at the time of the accident the gin was being operated by one N. B. Ledgerwood under a lease from appellant which exempted him from liability in damages for the injuries of which the appellee complains. The lease was dated August 1, 1918, and was between J. Collison, the lessor, and N. B. Ledgerwood, the lessee, and recites in part as follows: "For and in consideration of the payment of rentals hereinafter reserved, and the covenants herein, the lessor hereby grants, lets and leases unto the lessee, his executor, administrator and assigns, for a period of one (1) year from the date hereof, the following property:

"All the property—personal and real—now used and known as the 'Collison Gin Plant,' including the realty upon which it is located, in the town of Bald Knob, Arkansas, and the use and the employment of all machinery, fixtures, implements, utensils, supplies on hand, and all other things which now constitute or is a part of the said gin plant, or located upon the premises and which are considered a part of the said gin plant. * * *

"It being agreed, that the lessor shall furnish all wood, coal and other fuel, oil, belting, and other supplies, all repairs and new parts of machinery, and other similar things necessary for the successful operation of the said plant, and shall receive from the lessee the sum of four dollars and twenty-five cents for each and every bale of cotton ginned and turned out at the said plant and shall,

also, receive all profits and gain from the handling and sale of cotton seed coming from said gin. And the lessee shall pay said amount per bale, and concede all profits and gain from the handling and sale of cotton seed from said plant, and assumes and agrees to be responble for and assumes all liabilities for wages, debts, damages and otherwise, arising from or growing out of the operation of the said gin plant. And the lessor shall, during the period of said lease be in no wise connected with the operation or management of the said gin plant, and assumes no liability therefor. But the lessor shall assist the lessee in keeping books, accounts and do other records of the business when requested so to do.''

The contention of the appellant is that under the above lease Ledgerwood at the time of the accident was an independent contractor and if the explosion was caused through any acts of negligence such acts were those of Ledgerwood.

The court at the instance of the appellee over the objection of the appellant gave instructions to the effect that under the terms of the lease appellant agreed to furnish all the repairs on the cotton gin; that if the jury found that at the time the alleged lease was executed the boiler plug near the back end was insecurely fastened and that the threads of the boiler would not catch and hold the plug in position, and that by reason thereof the boiler at said place was unsafe and dangerous, and that appellant knew this or could have known it by the use of ordinary care and reasonable inspection; and that if they found that there was this unsafe and dangerous condition, and that it continued to exist from the date of the alleged lease until the injury, and that appellant negligently failed to repair it, the alleged lease would not constitute a defense, provided that the appellee and his child were lawfully upon the premises at the time and place of the alleged injury and that the negligence, if any, of the appellant was the direct and proximate result of the injury as defined in other instructions.

The specific grounds of objection to the above instructions were that they told the jury that the appellant agreed to furnish all the repairs on the cotton gin when under the undisputed evidence the appellant was only to furnish the material for making such repairs as his lessee might find necessary and such as he might make demand for; and, further, because the undisputed evidence showed that appellant had nothing to do with putting the machinery in condition and repair prior to the operation of the same for the season of 1918.

The instructions and the objections raised to them call for a construction of the alleged lease.

A majority of the court have reached the conclusion that the trial court was correct in construing the alleged lease as one which bound the appellant not only to furnish the material for making the repairs, but also to actually make all the repairs that were "necessary for the successful operation of the plant." It occurs to us that this is the correct construction of the contract when the words "furnish all repairs" are given their ordinary and obvious meaning.

The word "repair" as used in the instrument is a noun. It means "act of repair; restoration; or state of being restored to a sound or good state after decay, waste, loss, reparation; mending; also an instance or result of such restoration; often in the plural, as the repairs to the house are extensive." Webster's New International Dictionary; Funk & Wagnall's New Standard Dictionary, "Repairs."

One of the definitions of the word "repairs" given by the latter author is "condition after use, specially good condition; condition after repairing." The definition of the verb "furnish" as given by Funk & Wagnall's is "to equip or fit out; supply what is necessary or fitting." As given by Webster is, "to accomplish; insure; to provide for; to provide what is necessary for."

If the appellant had intended that the words should have the meaning which he now insists they have, it would have been easy for the attorney who prepared the

instrument under his direction to have so worded it as to convey that meaning by simply using the exact words to express his meaning which he now contends the words used do express, towit: "to furnish all materials for making repairs," instead of the words "furnish all repairs"—the words actually used.

The appellant having prepared the instrument is responsible for the language employed, and, as he relies upon the instrument for his protection, he is not in a position to insist upon a different interpretation of the words than that of their plain and ordinary meaning.

Other portions of the instrument strengthen this construction and show that the party named as the lessor in the instrument was to have nothing whatever to do except to pay the rent and keep the gin running or in operation after all machinery, wood, coal, supplies, repairs, etc., necessary for its successful operation were furnished or made by the appellant. Such being the meaning of the alleged lease, the issue as to whether or not the negligence averred was that of an independent contractor and the doctrine applicable thereto have no place in this case. The court, therefore, ruled correctly in refusing prayers by the appellant for instructions seeking to have that issue submitted to the jury.

The issues of negligence and contributory negligence under the evidence were issues of fact for the jury. They were submitted under familiar and correct declarations of law.

Appellant complains here of the ruling of the court in admitting the testimony of certain witnesses tending to show what the custom was with reference to parties being permitted to enter the boiler room where the appellee and his son were injured. The abstract of the appellant does not show that any objection was made at the time to the testimony of these witnesses. Furthermore, if such testimony had been objected to there was no error prejudicial to appellant in admitting it, for appellee testified without objection, and there was no testimony to the contrary, that he went into the engine

or boiler room for the purpose of inquiring when his cotton would be ginned. Those in charge knew that he and his son were in the boiler room, and no objectins were made to their presence there. The testimony as abstracted was competent on the issue as to whether or not the appellee was a trespasser and guilty of contributory negligence in going in and taking his son into a dangerous place. The testimony tends to prove that persons going to the gin on business were permitted to go into the boiler or engine room; that no steps were taken in any manner to prevent those having business at the gin from going into the engine or boiler room.

The appellant complains of the ruling of the court in permitting the witness Graham to testify that "he went down to the gin the next morning after the explosion and that he found where the boiler had a plug in it and that it had been blown out; that the threads were mighty bad on the boiler where the plug is supposed to set in; it was eaten out considerable; that the threads on the boiler had an appearance of being freshly done but were worn slick; that Mr. Collison spoke to him about the matter," etc.

The abstract of appellant does not show that any objection was made to the introduction of this testimony; and, even if it had been objected to, the testimony was competent for the reason that it tended to show the real condition that the boiler was in at the time the accident occurred.

The appellant also urges here that the court erred in permitting witness P. J. Donahue to testify as to the condition that the boiler was in some fifteen days after the accident, but the appellant neither in his brief nor in his abstract set out any testimony of the witness which shows that the boiler was in any different condition at the time witness saw the same than it was at the time the injury occurred. The testimony of this witness as abstracted shows that he testified as an expert, and in answer to hypothetical questions propounded to him he gave his opinion concerning the causes that must have brought about the worn condition of the threads in the

hole of the boiler from which the plug was blown as assumed in the question propounded to the witness.

In the testimony as abstracted it does not appear that any objection was urged at the trial either to the question or to the answer. But again we say that, even if objection had been offered to the testimony in the form in which it appears in appellant's abstract, we would have to hold that the testimony was competent, and that it did not in any manner contravene the doctrine announced by us in *Prescott & N. Ry. Co.* v. *Smith,* 70 Ark. 179; *St. L. S. W. Ry. Co.* v. *Plumlee,* 78 Ark. 148, and other cases more recent of the same purport, to the effect that testimony is incompetent after an accident occurred tending to show that the defect causing the accident and injury was removed, altered, or changed by the master for the purpose of showing negligence.

There is no error in the record, and the judgment is therefore affirmed.