MONTICELLO INSURANCE COMPANY *vs.* PAUL DION & another.[1]

No. 04-P-766.

Middlesex. April 4, 2005. - November 3, 2005.

Present: ARMSTRONG, C.J., LENK, & COWIN, JJ.

*Insurance,* Liability insurance, Coverage.

In an insurance coverage dispute, the insurer was entitled to a declaration that the commercial general liability policy at issue did not provide coverage for an accident that resulted in the death of the insured's cousin, who was working with the insured on a tree removal project, where the cousin did not come within the "temporary worker" exception to the policy's otherwise general exclusion of coverage for accidents to employees. [49-51]

CIVIL ACTION commenced in the Superior Court Department on November 3, 2000.

The case was heard by *E. Susan Garsh,* J., on motions for summary judgment.

*W. Thomas Smith* (*G. Thomas Pauling* with him) for Deborah Price.

*John P. Graceffa* (*Richard W. Jensen* with him) for the plaintiff.

*Dennis P. Philips,* for Paul Dion, was present but did not argue.

ARMSTRONG, C.J. Defendant Paul Dion, doing business as All the Answers Tree Service, was making a chain saw cut preparatory to felling a large tree when the tree snapped and fell the wrong way. It struck and killed defendant Price's decedent, Doreen C. Mellen, who was a cousin of Dion and who had been operating a wood-chipping machine on the same job. It is not unlikely that the noise from the machine made it impossible for Mellen to hear Dion's shouted warning.

---

[1] Deborah Price, administratrix of the estate of Doreen C. Mellen.

Dion carried a commercial general liability policy written by the plaintiff, Monticello Insurance Company (Monticello), which brought this declaratory judgment action to determine whether the policy covered Dion's potential liability to Mellen's estate. Acting on Monticello's motion for summary judgment, a Superior Court judge ruled that the policy did not cover the liability, and the defendants appealed.

Commercial general liability (CGL) policies are, in general, intended to protect an insured employer against liability for losses to third parties arising out of the operation of the insured's business.[2] 9 Couch, Insurance § 129.2 (3d ed. 1997). Injuries to employees are typically excluded from coverage, *id.* at § 129.7, as the expectation is that the employer will have in place workers' compensation insurance (or self-insurance) in one of the forms made compulsory by G. L. c. 152, § 25A.[3]

On the evidence before the motion judge, there was, as the judge recognized, an unresolved question of fact whether Mellen had been working the job as an employee or as an independent contractor. The policy provided coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."[4] "Bodily injury" is covered only if it is "caused by an 'occurrence,' " which is defined to include "an accident," thus including the injury to Mellen; and "bodily injury" includes "death resulting from [bodily injury]." Specifically excluded from coverage, however, are

"d. . . . Any obligation of the insured under a workers' compensation . . . law . . . ."

---

[2] "Homeowners' liability policies," in contrast, "typically exempt from coverage bodily injury or property damage arising out of the business pursuits of the insured." 9 Couch, Insurance, *supra* at § 128.12.

[3] Workers' compensation insurance is not compulsory for coverage of "seasonal or casual or part-time domestic servants." G. L. c. 152, § 1(4), fourth par., as appearing in St. 1972, c. 374, § 1. Grammatically, "casual" seems to modify "domestic servants" and thus to have no application to Mellen's status. See generally Nason, Koziol, & Wall, Workers' Compensation § 6.3(d) (3d ed. 2003).

[4] The limitation of coverage to business liabilities is set out in the definition of "insured." One who, like Dion, is designated in the declarations page as an "individual" is an insured "but only with respect to the conduct of a business of which [the policy holder is] the sole owner."

"e. 'Bodily injury' to:

"(1) An 'employee' of the insured arising out of and in the course of:

"(a) Employment by the insured; or

"(b) Performing duties related to the conduct of the insured's business."

The word "employee" is defined to include a "leased worker" but to exclude a "temporary worker." The term "leased worker" means "a person leased to you by a labor leasing firm . . . to perform duties related to the conduct of your business." The term " '[t]emporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."

Lastly, the policy was supplemented by an optional "independent contractors exclusion," which presumably reduced the premium, so that the policy did not cover

" 'bodily injury' . . . arising out of the operations performed for the named insured by independent contractors or acts or omissions of the named insured in connection with the insured's general supervision of such operations."

Interpreting these policy terms, the judge ruled, first, that if Mellen was an independent contractor, her death "ar[ose] out of the operations performed for" Dion because she would not have been in a position to be struck by the tree if she had not been operating the chipping machine, an operation that was an integral part of the tree removal work Dion was performing. That conclusion was correct; it was irrelevant that the death could be said to have been proximately caused by Dion's negligence, rather than by anything Mellen was doing. The phrase "arising out of the operations performed for the named insured by [the] independent contractor[]" imports a broader conception of causal connection, one fully met by the fact that she would not have been struck except for the fact that she was engaged in doing a critical piece of the work involved in the tree removal at the location on the job where she was expected to be and for which she was to be paid. See *Bagley* v. *Monti-*

*cello Ins. Co.*, 430 Mass. 454, 457 (1999) ("The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law. . . . Indeed, cases interpreting the phrase 'arising out of' in insurance exclusionary provisions suggest a causation more analogous to 'but for' causation . . .").

It would appear, therefore, that coverage is precluded by the policy, either for an independent contractor or for an employee, unless Mellen could be thought to come within the "temporary worker" exception to the policy's otherwise general exclusion of coverage for accidents to employees. Thus, the defendants argue that Mellen was a "temporary worker," in that she was "furnished to [Dion] . . . to meet . . . short-term workload conditions." Not implausibly, the necessity for Mellen to work on the particular job, which called for the clearing of more than twenty large trees — Dion called it a "big job" — could be thought of as a "short-term workload condition[]," so that Mellen could qualify as a "temporary worker" if she could be said to have been "furnished" to Dion.

The parties, unfortunately, are of no assistance in suggesting why the policy's definition of "temporary worker" is restricted to one who is "furnished to" the insured. In the words of the Superior Court judge, "[t]hat phrase necessarily connotes some involvement by a third person; . . . [t]he usual and ordinary sense of the words 'furnished to you' require[s] something more than Dion asking his cousin if she would work for him for a few days and his cousin agreeing." It is possible that the policy concept of "temporary worker" mirrors the workers' compensation insurance concept of the "loaned employee," see *Scribner's Case*, 231 Mass. 132, 133-137 (1918); *Ferrara's Case*, 269 Mass. 243, 244-245 (1929); *Wall's Case*, 293 Mass. 93, 94-95 (1935), as to whom, under the common law, the obligation to provide workers' compensation coverage passed from the "general [i.e., lending] employer" to the "special [i.e., borrowing] employer" along with direction and control over the employee's work. See Nason, Koziol, & Wall, Workers' Compensation §§ 8.10, 8.11 (3d ed. 2003). Unlike the "leased worker," for whose benefit workers' compensation insurance was reliably maintained by the general employer (the labor-

leasing agency), it is possible that the "temporary worker" exception to the general exclusion of coverage for employees may have been intended as gap coverage to protect the special employer (i.e., the CGL insured) where the furnishing employer may lack coverage. In any event, we agree with the judge that the words "furnished to [the insured]" cannot be read out of the definition of "temporary worker."[5]

Anticipating that we might so rule, the defendants argue that Doreen Mellen was in fact "furnished to" Dion and thus qualified under the temporary worker exception. Pointing to the fact that her main source of income was tree or landscaping work, that she possessed some of the gear (including two chain saws, three ladders, various ropes, shears, and handsaws), and that she sometimes did work as a sole contractor and at other times helped other contractors like Dion on larger jobs, the defendants conclude that she was in effect a sole proprietorship and that her sole proprietorship furnished her services to Dion the day of the accident. The argument is interesting but must be seen as a purely verbal formulation designed to read "furnished to" out of the policy. Any employee of a business, at least since the abolition of slavery, can be said to "furnish his services" to his employer, a phrase synonymous with "work for" his employer; and Doreen Mellen's "sole proprietorship" had no legal existence separate from her own.[6]

It follows, therefore, that Monticello was entitled to a declaration that the commercial general liability policy it wrote for Paul Dion doing business as All the Answers Tree Service did not provide coverage for the accident that resulted in the death of Doreen Mellen on November 23, 1999, regardless of whether

---

[5]The majority of courts that have considered the question are in accord with this conclusion. See *American Family Mut. Ins. Co.* v. *Tickle*, 99 S.W. 3d 25, 30-31 (Mo. Ct. App. 2003); Nautilus Ins. Co. *vs.* Gardner, U.S. Dist. Ct., No. Civ. A. 04-1858 (E.D. Pa. 2005). But see *Ayers* v. *C & D Gen. Contractors*, 237 F. Supp. 2d 764, 768-769 (W.D. Ky. 2002). See also *Bituminous Cas. Corp.* v. *J & L Lumber Co.*, 373 F. 3d 807, 815 n.2 (6th Cir. 2004).

[6]See *Credit Assocs. of Maui, Ltd.* v. *Carlbom*, 98 Haw. 462, 465-466 (Ct. App. 2002) (sole proprietorship has no legal identity separate from owner; collects cases); *Vernon* v. *Schuster*, 179 Ill. 2d 338, 347-348 (1997) (same); 1 Cavitch, Business Organizations § 1.01, at 1-3, & § 1.04 (2005). See generally *Ladd* v. *Scudder Kemper Invs., Inc.*, 433 Mass. 240, 243-244 (2001) (discussing sole-proprietorship concept).

Mellen was an independent contractor or an employee. The judge correctly allowed Monticello's motion for summary judgment and denied that of the defendants.

*Judgment affirmed.*