# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1166

_____

Source Food Technology, Inc.,    *
                                 *
            Appellant,           *
                                 *      Appeal from the United States
    v.                           *      District Court for the District of
                                 *      Minnesota.
United States Fidelity and       *
Guaranty Company,                *
                                 *
            Appellee.            *

_____

Submitted: October 5, 2006
Filed: October 13, 2006

_____

Before SMITH, HEANEY[1] and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Source Food Technology, Inc. ("Source Food") appeals the order of the district court[2] granting summary judgment to United States Fidelity and Guaranty Company

---

[1]The Honorable Gerald W. Heaney resigned while this matter was pending. Accordingly, this opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

("USF & G") on Source Food's claim for breach of contract for denial of insurance coverage based on "direct physical loss to" its property. For the reasons discussed below, we affirm the judgment of the district court.

## I.    BACKGROUND

Source Food is a Minnesota company that sells cooking oil and shortening containing beef tallow from which the cholesterol has been removed ("beef product"). The United States Department of Agriculture ("USDA") prohibited the importation of ruminants or ruminant products from Canada on May 20, 2003, after a cow in Canada tested positive for bovine spongiform encephalopathy, commonly known as "mad cow disease." At the time the border was closed to the importation of beef, Source Food's sole supplier of beef product was Hubbert's Industries in Ontario, Canada. Hubbert's Industries manufactured and packaged the beef product in Canada using Source Food's patented manufacturing process for removing cholesterol from beef tallow. Just prior to the embargo, Source Food placed an order for beef product with Hubbert's Industries. The beef product was manufactured, packaged and loaded onto a truck for shipping to Source Food but was not shipped due to the USDA's order. Although the parties dispute whether at this point Source Food owned the beef product, we assume, as did the district court, that the beef product inside the truck in Canada was the property of Source Food.[3] The parties agree that there is no evidence that the beef product was contaminated by mad cow disease.

When the border was closed to the importation of beef products, Source Food was unable to fill orders and was forced to find a new supplier of beef product.

_____

[3]Source Food contends that when the beef product was loaded onto a truck in Canada to be shipped to Source Food in the United States, "[u]nder the understanding between [Source Food] and its Canadian supplier, the product was at that point [Source Food's]." Appellant's Brief at 3. However, according to USF & G, Source Food did not own the beef product and therefore had no insurable interest in it.

Source Food's best customer, Casey's General Store, Inc., terminated its contract with Source Food seven months early because Source Food was unable to deliver the required one or two truckloads of beef product per week after May 20, 2003.

Source Food submitted a claim under its insurance policy with USF & G, which included property and business interruption coverage. Source Food claimed damages for extraordinary operating expenses, loss of profits based on the early termination of its contract with Casey's General Store, Inc., and the cost of obtaining from a new supplier in Arkansas an alternative product with cholesterol and later, when the necessary manufacturing equipment was installed, the beef product without cholesterol.

The insurance policy provides coverage for the loss of business income where there is direct physical loss to the insured's property:

> (1) "Business income." We will pay the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by *direct physical loss to Property* (other than those items listed in SECTION I.A.2.), including Property Off Premises, and result from any Covered Cause of Loss . . . .

> (4) Action by Civil Authority. We will pay for the actual loss of "business income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the described premises due to *direct physical loss to property*, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

Section I.A.4(b)(1) and (4) (emphases added). However, the insurance policy does not define the phrase "direct physical loss to property."

The insurance claim was denied. Source Food then sued St. Paul Fire & Marine Insurance Company and The St. Paul Travelers Companies, the parent companies of USF & G, for breach of contract in Minnesota state court. Source Food later added USF & G to the suit. USF & G moved to dismiss the other two insurers and to dismiss the suit for failure to state a claim upon which relief can be granted because there was no direct physical loss to Source Food's property. Source Food filed a cross-motion for summary judgment, contending that the loss of function of the beef product due to the USDA order constituted direct physical loss to its property. The Minnesota state court dismissed St. Paul Fire & Marine Insurance Company and The St. Paul Travelers Companies from the case and held that Source Food had set forth a legally sufficient claim for relief, but it declined to grant summary judgment to Source Food.

With the dismissal of the two Minnesota insurance companies, USF & G removed the action to federal court on the basis of diversity of citizenship between the remaining parties. USF & G filed a motion for summary judgment, again claiming that Source Food did not satisfy the direct physical loss to property requirement of the insurance policy. The district court rejected Source Food's argument that the court was prohibited from ruling on the issue of direct physical loss to property under the "law of the case" doctrine because the state court had already decided the issue.[4] The district court determined that Source Food suffered no direct physical loss to property and granted summary judgment in favor of USF & G. Source Food appeals the district court's order.

---

[4]At oral argument, Source Food abandoned its argument that the district court erred in not holding that the "law of the case" doctrine precluded the district court from ruling on the issue of whether impairment of function can constitute direct physical loss to property.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Cordry v. Vanderbilt Mortgage & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006). We also review the district court's interpretation of an insurance policy provision de novo. *State Farm Fire & Cas. Co. v. Nat'l Research Ctr. for Coll. & Univ. Admissions*, 445 F.3d 1100, 1102 (8th Cir. 2006). In this diversity case, we apply Minnesota law. *See id.*

On appeal, Source Food argues that the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were physically contaminated by mad cow disease and lost its function. Source Food principally relies upon *Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147 (Minn. Ct. App. 2001), and *Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co.*, 98 N.W.2d 280 (Minn. 1959), to support its position that the impairment of function and value of a food product caused by government regulation is a direct physical loss to insured property.

Both of the Minnesota cases that Source Food relies on, as well as *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296 (Minn. Ct. App. 1997), are distinguishable from this case. The insurance policy provisions in *General Mills* and *Sentinel* are comparable to the provisions at issue here. However, coverage was found to be triggered in those two cases by actual physical contamination of insured property. The insurance policy in *General Mills* required "direct physical loss or damage to property." 622 N.W.2d at 151 (internal quotations omitted). Sixteen million bushels of General Mills's raw oats were treated with a pesticide not approved by the FDA for use on oats. *Id.* at 150. Although consumption of the contaminated oats was not hazardous to human health, the oats were in violation of FDA regulations and could not be used in General Mills's oat-based products. *Id.* at 150. Because the contamination rendered the oats unusable, General Mills was

entitled to coverage for "direct physical loss or damage to property." *Id.* at 151–52. The insurance claim in *Sentinel* was brought under a policy covering "direct physical loss to building(s)" and was based on the release of asbestos fibers and resulting contamination of apartment buildings. 563 N.W.2d at 298. The Minnesota Court of Appeals held that the asbestos contamination constituted direct physical loss to the properties because "a building's function may be seriously impaired or destroyed and the property rendered useless *by the presence of contaminants*." *Id.* at 300 (emphasis added). As opposed to these two cases in which actual physical contamination was established, Source Food concedes that the beef product inside the truck in Canada was not physically damaged or contaminated in any manner.

The insurance policy at issue in *Marshall Produce* did not cover just "direct *physical* loss" as in Source Food's insurance policy, but rather it covered "all loss or damage by fire." 98 N.W.2d at 285 (internal quotations omitted). The supplier in *Marshall Produce* manufactured drums of egg powder and other goods for the army. After smoke from a nearby fire penetrated the manufacturing plant, the army rejected the drums because they violated the sanitation requirements of the government contract that the "processing and storing of eggs and egg products must be done in an area free from odors, dust, and smoke-laden air." *Id.* at 296. Shortly after the fire, an inspector "examined the packaging around the cans [and] . . . found smoke contamination, a very strong odor from the smoke throughout the package and around the border of the package." *Id.* Although it was not established that the egg powder inside the drums was physically contaminated by the smoke, the Minnesota Supreme Court determined that the supplier was entitled to insurance coverage because the insurance policy covered "all loss or damage by fire" and the rejection of the goods was a loss caused by the smoke from the fire. *Id.* at 296-97. By contrast, the portions of Source Food's insurance policy at issue only provide coverage when there is direct physical loss to property, and Source Food's beef product suffered no physical contamination.

In *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613 (8th Cir. 2005), a case applying Minnesota law and discussing the same Minnesota insurance cases, we rejected an argument very similar to that made by Source Food. When an earthquake caused a loss of power to two Taiwanese factories, the factories could not supply products to a subsidiary of Pentair for two weeks. *Id.* at 614. Pentair argued that the property of the Taiwanese factories suffered "direct physical loss or damage" when the power outages prevented the factories from performing their function of manufacturing products. *Id.* at 615. We distinguished *Sentinel* and *General Mills*, explaining that "in those cases, insured property was physically contaminated—a building by the release of asbestos fibers in *Sentinel*, and grain by application of an unapproved pesticide in *General Mills*." *Id.* at 616. Although we noted that "[o]nce physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss, particularly a business interruption loss," we refused to adopt the position that "direct physical loss or damage is established *whenever* property cannot be used for its intended purpose" and noted that our holding was also consistent with *Marshall Produce*. *Id.*

Although Source Food's beef product in the truck could not be transported to the United States due to the closing of the border to Canadian beef products, the beef product on the truck was not—as Source Foods concedes—physically contaminated or damaged in any manner. To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word "physical" meaningless. Moreover, the policy's use of the word "to" in the policy language "direct physical loss *to* property" is significant. Source Food's argument might be stronger if the policy's language included the word "of" rather than "to," as in "direct physical loss *of* property" or even "direct loss *of* property." But these phrases are not found in the policy. Thus, the policy's use of the words "to property" further undermines Source Food's argument that a border closing triggers insurance coverage under this policy.

Source Food did not experience direct physical loss to its property. Therefore, Source Food cannot recover the loss of business income resulting from the embargo on beef products under insurance policy provisions requiring direct physical loss to its property.

## III.  CONCLUSION

We conclude that the district court did not err in granting summary judgment to USF & G and affirm the judgment of the district court.

_____