# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 07-3057

_____

Northland Casualty Company,

      Appellee,

v.

Barbara Meeks, individually and as
Special Administratrix of the Estate of
Floyd Meeks, Deceased; Floyd Meeks
Jr., individually; Jewel Meeks,
individually; Lloyd Gene Meeks,
individually; Shelia Meeks Hale,
individually; James Rual Meeks,
individually; Deanie Renee Meeks
Hester, individually; Jewel Meeks
Webb, individually; Andrew Thomas
Meeks, individually; Don Henry Paul
Meeks, individually,

      Appellants.

_____

No. 07-3199

_____

Appeals from the United States
District Court for the
Eastern District of Arkansas.

Northland Casualty Company,

      Appellee,

v.

Rocky Harrell, doing business as      *
Rocky Harrell Farms,      *
     *
        Appellant.      *

_____

Submitted: April 18, 2008
Filed: August 28, 2008
_____

Before GRUENDER, BRIGHT and BENTON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

The estate and heirs of Floyd Meeks (collectively "Meeks") and Rocky Harrell appeal the district court's[1] grant of summary judgment to Northland Casualty Company ("Northland"). The district court held that Harrell's commercial insurance policy with Northland that provided business auto coverage ("the Policy") did not cover claims arising from the fatal injuries suffered by Floyd Meeks ("Floyd") because it determined that Floyd was Harrell's employee. On appeal, Meeks and Harrell argue that the Policy covered their claims because Floyd was either an independent contractor or a temporary worker. For the reasons discussed below, we affirm.

I.     **BACKGROUND**

In August 2002, Floyd and Harrell agreed that Floyd would transport agricultural products for Harrell's hauling company on an "as needed" basis during the harvest season. Harrell was a farmer who also owned and operated a

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

transportation company that was in the business of hauling agricultural products. While Floyd drove a school bus for the North Little Rock School district, he asked Harrell for a full-time driver position. Harrell denied this request because the work was seasonal. Every week during the harvest season, Harrell told Floyd and the other drivers the loads to pick up, from whom to pick them up, and where to deliver them. The drivers were able to choose the exact times they would pick up the loads and what routes to take to complete the deliveries, so long as the deliveries were completed within a week. Harrell owned the trucks and leased the trailers, but he permitted his drivers to keep them at their houses. Harrell also paid all vehicle operating costs, including licensing, insurance and gas. The drivers could supplement the insurance if they chose to do so. Each driver received weekly payments equivalent to twenty-five percent of the amount charged by Harrell for the loads that driver transported. Harrell paid the drivers even if a customer did not pay him. No taxes were withheld from the drivers' paychecks, and the drivers received 1099 tax forms, not W-2 forms. While Harrell had no written contracts with his drivers, he prohibited them from hiring subcontractors. Either Harrell or the drivers could terminate the drivers' employment at any time.

The Policy that Harrell purchased from Northland provided coverage for Harrell's tractors and trailers with certain exclusions. Section B of the liability coverage section states, "This insurance does not apply to . . . (4) . . . 'Bodily injury' to: (a.) An 'employee' of the 'insured' arising out of and in the course of: (1) Employment by the 'insured'; or (2) Performing the duties related to the conduct of the 'insured's' business . . . ." The Policy also defined the relevant terms as follows:

>   "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
>
>   . . .

"Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

. . .

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

On October 4, 2002, Floyd was fatally injured in an accident while transporting agricultural products for Harrell using Harrell's tractor-trailer. After Floyd's death, Meeks filed a state court action against Harrell under the Arkansas Wrongful Death Statute, Ark. Code Ann. § 16-62-102. Harrell sought defense and coverage from Northland. Relying on our diversity jurisdiction, Northland then brought this declaratory judgment action to disclaim these obligations. Northland filed a motion for summary judgment, which Meeks and Harrell opposed. They argued that a genuine issue of material fact existed as to whether Floyd was an "independent contractor" or a "temporary worker." Rejecting this argument, the district court held that no genuine issues of material fact existed and that Floyd was Harrell's employee as a matter of law. In reaching its conclusion, the district court applied Arkansas's ten-factor test. Alternatively, the court held that Floyd was an employee under Arkansas's extension of the definition of employee found in 49 C.F.R. § 390.5 to intrastate operations of motor vehicles in Rule 17.1 of the Arkansas State Highway Commission Regulations. Finally, the district court held that Floyd was not covered by the Policy as a "temporary worker" because he was not "furnished to" Harrell by another entity. Meeks and Harrell appeal.

-4-

## II.    DISCUSSION

"We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party." *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 836 (8th Cir. 2006). "We also review the district court's interpretation of an insurance policy provision de novo." *Id.* In this diversity case, we apply Arkansas law. *See id.*

### A.    Employee/Independent Contractor

Meeks and Harrell argue that summary judgment was not appropriate because there is a genuine issue of material fact as to whether Floyd was an employee under Arkansas law. "Although agency is a question of fact ordinarily determined by the trier of fact, where the facts are undisputed, and only one inference can reasonably be drawn from them, it becomes a question of law." *Howard v. Dallas Morning News, Inc.*, 918 S.W.2d 178, 185 (Ark. 1996); *accord Cotton v. Commodore Exp., Inc.*, No. 02-604, 2007 WL 283135, at *1 (E.D. Ark. Jan. 30, 2007) (stating that an agency determination is "a legal conclusion, requiring both a determination of facts and application of law," and "where the material undisputed facts permit only one reasonable legal conclusion, summary judgment is appropriate") (citing *Howard*, 918 S.W.2d at 185). Because the facts attendant to Floyd's employment relationship are undisputed, we now review de novo the district court's legal conclusion that Floyd was Harrell's employee.

Applying Arkansas law to determine whether Floyd was an employee or an independent contractor, we consider the totality of the circumstances by applying Arkansas's ten-factor test. *See Shelter Mut. Ins. Co. v. Jones*, 343 F.3d 925, 926 (8th Cir. 2003) (per curiam). The factors we consider are:

(a)     the extent of control which, by the agreement, the master may exercise over the details of the work;

(b)     whether or not the one employed is engaged in a distinct occupation or business;

(c)     the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d)     the skill required in the particular occupation;

(e)     whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f)     the length of time for which the person is employed;

(g)     the method of payment, whether by time or by the job;

(h)     whether or not the work is a part of the regular business of the employer;

(i)     whether or not the parties believe they are creating the relation of master and servant; and

(j)     whether the principal is or is not in business.

*Blankenship v. Overhold*, 786 S.W.2d 814, 815 (Ark. 1990) (citing Restatement (Second) of Agency § 220 (1958)). The primary factor in this analysis is the extent of control an employer may exercise over his worker. *Shelter*, 343 F.3d at 926 & n.2. "It is the right to control, not the actual control, that determines the relationship." *Ark. Transit Homes, Inc. v. Aetna Life & Cas.*, 16 S.W.3d 545, 548 (Ark. 2000).

Applying these factors, we conclude that the district court did not err in determining that Floyd was Harrell's employee. Significantly, Harrell had and exerted full control over the critical details of Floyd's work. Harrell could terminate Floyd's employment at will, and he prohibited Floyd from subcontracting his work. Harrell also received all customer orders, assigned all delivery requests and required the drivers to complete each delivery within one week. Floyd had to charge all fuel purchases to Harrell's account at a specified gas station, which limited the routes

-6-

available to Floyd.  Furthermore, Harrell instructed Floyd on proper load handling and required Floyd to contact him directly in case of any problem or emergency.

In addition to the control Harrell established over Floyd, the remaining factors also support the determination that Floyd was an employee. Floyd hauled exclusively for Harrell and was not engaged in an independent hauling business. While Floyd needed some skill to drive a tractor-trailer, that skill was not unique and not more prevalent among independent contractors than employees. Harrell also supplied all necessary equipment to Floyd and paid all operating costs. Although Harrell hired Floyd only for harvest season, Floyd was employed for the entire season and not for one specific job. Additionally, Floyd was paid even if a customer failed to pay Harrell. The loads Floyd hauled were integral and essential to Harrell's hauling business. The parties understood that Floyd worked directly for Harrell and that Floyd himself, not a worker Floyd subcontracted, would make the deliveries. While Floyd physically controlled the tractor-trailer during transport, Harrell retained ultimate authority and his drivers "follow[ed his] instructions." Harrell also was the sole proprietor of his trucking business.

Notwithstanding these undisputed facts, Meeks and Harrell argue that the record fails to establish that Floyd was Harrell's employee. They claim that a fact-finder could reasonably conclude that Floyd was an independent contractor after considering the ten factors. In support of this argument, they claim that Harrell's issuance of 1099 tax forms, instead of W-2 forms, proves that Floyd was an independent contractor. However, we previously have held that use of a 1099 tax form does not undermine the conclusion that a worker is an employee and not an independent contractor. *Shelter*, 343 F.3d at 926. In reaching this conclusion, we noted that "in construing [an] insurance policy's definition of 'employee,' economic reality rather than legalistic form should be determinative." *Id.* (quoting *Eagle Star Ins. Co. v. Deal*, 474 F.2d 1216, 1220 (8th Cir. 1973)). We likewise conclude that the fact that Floyd received a 1099 tax form does not alter our analysis that Floyd was an

employee. Meeks and Harrell also argue that several other facts support a finding that Floyd was an independent contractor, such as Floyd's ability to determine the exact route and timing of the deliveries and Floyd's ability to keep the truck at his house between deliveries. However, these facts do not undermine our conclusion regarding the extent to which Harrell had the right to and did, in fact, exercise control over Floyd. Therefore, we find that the totality of the circumstances supports the district court's conclusion that the only reasonable inference to be drawn from the undisputed facts is that Floyd was an employee of Harrell, not an independent contractor.[2]

## B.    Employee/Temporary Worker

Meeks and Harrell also argue that Floyd was not an employee under the Policy because he was a "temporary worker." The Policy excludes a "temporary worker" from its definition of "employee" and defines "temporary worker" as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." The Policy does not define the term "furnished to." Meeks and Harrell argue that Floyd was a temporary worker either because he furnished himself to Harrell or because the "furnished to" requirement does not apply to a worker who was hired "to meet seasonal or short-term workload conditions."

"Insurance contracts are to be construed strictly against the insurer, but where language is unambiguous, and only one reasonable interpretation is possible, it is the duty of the courts to give effect to the plain wording of the policy." *Smith v. S. Farm Bureau Cas. Ins. Co.*, 114 S.W.3d 205, 206 (Ark. 2003). "[T]he language of an insurance policy is to be construed in its plain, ordinary, and popular sense." *Id.* at

---

[2]Because we find that Floyd was an employee under the ten-factor test, we need not reach the district court's alternative basis for concluding that Floyd was an employee under the Arkansas State Highway Commission Regulations.

206-07 (quotation omitted). The Arkansas Supreme Court has not addressed this issue or interpreted the phrase "furnished to" in an insurance contract. "When there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the issues before us." *Cotton v. Commodore Exp., Inc.*, 459 F.3d 862, 864 (8th Cir. 2006). While Meeks and Harrell argue that the term "furnished to" is ambiguous and must be construed in their favor, we find that the Policy's use of the term "furnished to" is unambiguous and clearly requires the involvement of a third party in furnishing a worker either "to substitute for a permanent 'employee' on leave" or "to meet seasonal or short-term workload conditions."

We first consider whether a third party must furnish the worker to the insured in order to qualify as a temporary worker, or whether, as Meeks and Harrell claim, Floyd could qualify as a temporary worker by furnishing himself to Harrell. Other courts have determined that a third party must furnish the worker based, in part, on the definition of "furnish" in Black's Law Dictionary and other dictionaries. *See AMCO Ins. Co. v. Dorpinghaus*, No. 05-1296, 2007 WL 313280, at *4 n.3 (D. Minn. Jan. 12, 2007); *Nautilus Ins. Co. v. Gardner*, No. 04-1858, 2005 WL 664358, at *7 (E.D. Pa. Mar. 21, 2005). Black's Law Dictionary defines "furnish" as "to supply, provide or equip, for accomplishment of a particular purpose." Black's Law Dictionary 675 (6th ed. 1990). Webster's Third New International Dictionary of the English Language defines "furnish" as "to provide or supply with what is needed, useful, or desirable." Webster's Third New International Dictionary of the English Language 923 (2002).[3] We believe that the term "furnished to," in the context of the Policy's definition of

_____

[3]The Arkansas Supreme Court also utilizes the definitions in Black's Law Dictionary and other dictionaries when determining what a term means. *See, e.g.*, *City of Fort Smith v. Carter*, --- S.W.3d ---, 2008 WL 90442 (Ark. Jan. 10, 2008). It utilized the Funk & Wagnall's definition of "furnish" in another context. *Collison v. Curtner*, 216 S.W. 1059, 1061 (Ark. 1919). That definition of "furnish" was "[t]o equip or fit out; supply what is necessary or fitting." *Id.*

"temporary worker," "is not ambiguous and necessarily implies that a third party has been involved in providing or supplying the worker to the insured." *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 721 (Mo. 2008) (en banc). Thus, we predict that the Arkansas Supreme Court would follow the courts that have determined that the involvement of a third party is required by the use of the term "furnished to" in the definition of "temporary worker." *See AMCO*, 2007 WL 313280, at *4 n.3; *Nautilus*, 2005 WL 664358, at *7.

We also believe that the structure of the "temporary worker" definition unambiguously requires the involvement of a third party. If "furnished to" did not require a third party to supply the temporary worker and any worker could furnish himself or herself to an employer as Meeks and Harrell argue, then the term "furnished to" would be meaningless. *See AMCO*, 2007 WL 313280, at *5. "Construction that neutralizes any provision of [an insurance] contract should never be adopted if the contract can be construed to give effect to all provisions." *Smith*, 114 S.W.3d at 207. Under Meeks and Harrell's interpretation, any worker who substituted for a permanent employee on leave or who met seasonal demands or short-term workload conditions would satisfy the "furnished to" requirement. *See AMCO*, 2007 WL 313280, at *5. Such an interpretation of the "temporary worker" definition would neutralize the term "furnished to," and we predict that the Arkansas Supreme Court would not adopt such a definition.

Furthermore, we disagree with Meeks and Harrell's argument that the Policy's definition of "leased worker" creates ambiguity as to whether the term "furnished to" requires the involvement of a third party in the furnishing of a temporary worker. The Policy's definition of "leased worker" specifically states that a leased worker must be furnished by a labor leasing firm. Meeks and Harrell contend that if the Policy meant to require another party to furnish a "temporary worker," then the Policy would have specified that the temporary worker be furnished by such a third party. However, "just because one provision of an insurance policy refers to third-party involvement

more explicitly than another provision of the same policy does not mean that third-party involvement is *excluded* from the latter provision." *Id.* at *6. The distinction merely shows that the provisions contemplate differing degrees of specificity. *Id.* It does not eliminate the requirement that a "temporary worker" must still be furnished by a third party. Therefore, we believe that the Arkansas Supreme Court would determine that the term "furnished to" in the definition of "temporary worker" requires that a third party furnish the temporary worker to the insured.

Next, we determine whether the term "furnished to" unambiguously applies both to the clause "to substitute for a permanent employee" and to the clause "to meet seasonal or short-term workload conditions." If it only applied to the clause "to substitute for a permanent employee," the "temporary worker" definition would not make grammatical sense. *See Am. Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 30-31 (Mo. Ct. App. 2003) (applying a grammatical analysis of the "temporary worker" definition). As the *American Family Mutual* court reasoned, "[t]he structure of the sentence defining 'temporary worker' indicates that the clause 'who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions' is a subordinate adjective clause modifying 'person'." *Id.* at 30. The phrases "to substitute for a permanent employee on leave" and "to meet seasonal or short-term workload conditions" are parallel infinitive phrases that equally modify the verb "is furnished" because they are separated by the word "or." *Id.* at 30-31. Reading the second clause without the term "furnished to" is "grammatically impossible." *Id.* at 31. Based on this sound grammatical analysis, we predict that the Arkansas Supreme Court would find that the term "furnished to" applies to both "to substitute for a permanent employee on leave" and "to meet seasonal or short-term workload conditions." Therefore, we reject Meeks and Harrell's argument that Floyd qualified as a temporary worker merely because he was hired as a seasonal driver.

Meeks and Harrell rely on *Bituminous Casualty Corp. v. Mike Ross, Inc.* in support of their arguments. 413 F. Supp. 2d 740 (N.D. W. Va. 2006). The

*Bituminous* court held that "furnished to" was ambiguous and that it only applied to the first part of the "temporary worker" definition, "to substitute for a permanent employee on leave," and not the second part of the definition, "to meet seasonal demands [or] short-term workload conditions." *Bituminous*, 413 F. Supp. 2d at 745. However, the majority of courts that have reviewed this policy language in one or both of these contexts have agreed with our conclusion. *See, e.g.*, *AMCO Ins. Co.*, 2007 WL 313280, at \*4 ("[A] worker is not furnished to an insured unless a third party–typically a staffing agency–has been involved in providing or supplying the worker to the insured."); *Gavan*, 242 S.W.3d at 721; *Gen. Agents Ins. Co. of Am., Inc. v. Mandrill Corp.*, 243 Fed. Appx. 961, 967-68 (6th Cir. 2007) (unpublished) (opinion of Kennedy, J.); *Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639-40 (Colo. Ct. App. 2007), *cert. denied*, No. 08SC23, 2008 WL 2008622 (Colo. May 12, 2008) (en banc); *Nautilus*, 2005 WL 664358, at \*6-7; *Brown v. Ind. Ins. Co.*, 184 S.W.3d 528, 537-40 (Ky. 2005); *Monticello Ins. Co. v. Dion*, 836 N.E.2d 1112, 1115 (Mass. App. Ct. 2005); *Nationwide Mut. Ins. Co. v. Allen*, 850 A.2d 1047, 1057 (Conn. App. Ct. 2004); *Am. Family Mut.*, 99 S.W.3d at 30-31.[4]

We believe that the Arkansas Supreme Court would find that the term "furnished to" unambiguously requires that a third party furnish the temporary worker

---

[4]Meeks and Harrell also relied on *American Family Mutual Insurance Co. v. As One, Inc.*, 189 S.W.3d 194 (Mo. Ct. App. 2006). However, in a subsequent case, the Missouri Supreme Court overruled this decision and found that the term "'furnished to' . . . is not ambiguous and necessarily implies that a third party has been involved in providing or supplying the worker to the insured." *Gavan*, 242 S.W.3d at 721.

While Meeks and Harrell did not provide other case law to support their position, we note that two other courts have found the term "furnished to" in the definition of "temporary worker" to be ambiguous. *See Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co.*, 853 N.Y.S.2d 870 (N.Y. Sup. Ct. 2008); *Nat'l Indem. Co. v. Landscape Mgmt.*, 963 So. 2d 361 (Fla. Dist. Ct. App. 2007).

to the insured. Accordingly, Floyd does not qualify as a temporary worker under the Policy.

## III. CONCLUSION

Because there were no genuine issues of material fact and because the district court correctly determined that Floyd was Harrell's employee and not a temporary worker as defined by the Policy, we affirm the district court's grant of summary judgment to Northland.

BRIGHT, Circuit Judge, concurring and dissenting in part.

The insured under this policy is being sued by the estate of his former employee. The issue we must decide is whether the insurance policy contained a provision that would cover the insured under Arkansas law. I concur with the majority except as to whether there is insurance coverage to the truck owner, Rocky Harrell, on the basis of Floyd Meeks's status as a temporary employee. I conclude that no exclusion applies to Harrell's insurance policy regarding Meeks.

The truck owner and policyholder Harrell would not receive liability insurance coverage if a regular employee operated the Harrell-owned truck in these circumstances.

However, it is conceded that insurance coverage would apply if a third party had furnished Harrell with a temporary driver-employee, but coverage would not apply if Harrell himself hired a temporary driver-employee. Such a result is anomalous and the distinction does not make sense.

If one reads the insurance policy carefully, one is struck by the ambiguity contained in the pertinent policy language. The policy language is as follows:

-13-

'Temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave *or* to meet seasonal or short-term workload conditions.  (Emphasis added).

The focus is on the language following the first "or."  This provision may be read so that:

'Temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or [furnished] to meet seasonal or short-term workload conditions.

Alternatively, this provision may be read so that:

'Temporary worker' means a person to meet seasonal or short-term workload conditions.

When one examines this temporary worker provision, one is struck by the uncertainty of its meaning.

The majority applies Missouri and majority law to read "furnish to" as unambiguous, requiring a third party to furnish a substitute for a permanent employee

and to furnish a temporary employee.[5] However, other judges have read the provision differently.[6]

It is the insurance company that should make its language clear, and if it does not do so, it must suffer the consequences of its ambiguous language. Reasonable judges, as well as reasonable persons, may read the temporary worker clause differently, some to require third party involvement and some not to require such third party action. This is sufficient for me to dissent from today's ruling.

_____

---

[5]*Gen. Agents Ins. Co. of Am. v. Mandrill Corp.*, 243 Fed. Appx. 961, 967-68 (6th Cir. 2007) (unpublished) (opinion of Kennedy, J.)*; AMCO Ins. Co. v. Dorpinghaus*, No. 05-1296, 2007 WL 313280, at *15 (D.Minn. Jan. 12, 2007); *Nautilus Ins. Co. v. Gardner*, No. 04-1858, 2005 WL 664358, at *7 (E.D. Pa. Mar. 21, 2005); *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 721 (Mo. 2008) (en banc); *Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639-40 (Colo. Ct. App. 2007), *cert denied*, No. 08SC23, 2008 WL 2008622 (Colo. May 12, 2008) (en banc); *Brown v. Ind. Ins. Co.*, 184 S.W.3d 528, 537-40 (Ky. 2005); *Monticello Ins. Co. v. Dion*, 836 N.E.2d 1112, 1115 (Mass. App. Ct. 2005); *Nationwide Mut. Ins. Co. v. Allen*, 850 A.2d 1047, 1057 (Conn. App. Ct. 2004).

[6]*Bituminous Cas. Corp. v. Ross*, 413 F. Supp. 2d 740, 744-45 (N.D. W. Va. 2006); *Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co.*, 853 N.Y.S.2d 870, 873 (N.Y. Sup. Ct. 2008); *Nat'l Indem. Co. of South v. Landscape Mgmt. Co.,* 963 So. 2d 361, 364 (Fla. Dist. Ct. App. 2007).