# United States Court of Appeals
## For the First Circuit

No. 06-2730

SCOTTSDALE INSURANCE COMPANY,

Plaintiff, Appellee,

v.

RAUL TORRES,

Defendant, Appellant,

CARRABASSETT TRADING COMPANY, LTD,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, <u>U.S. District Judge</u>]

Before

Lipez and Howard, <u>Circuit Judges</u>,

and Gelpi,* <u>District Judge</u>

Ross Anneberg, with whom <u>Ellis Law Offices</u> was on brief, for appellant.
Steven P. Perlmutter, with whom <u>Robinson & Cole LLP</u> was on brief, for appellee.

April 1, 2009

---

*Of the District of Puerto Rico, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>.  On August 23, 2004, Raul Torres ("Torres") was seriously injured while working at Carrabassett Trading Company ("CTC") in North Oxford, Massachusetts.  Torres came to work at CTC through an agency known as Venturi Staffing Partners, Inc. ("Venturi").  When Torres subsequently sued CTC in state court ("the underlying suit"), CTC contacted its liability insurance carrier, Scottsdale Insurance Co. ("Scottsdale"), for defense and indemnity.  Scottsdale subsequently filed suit in federal court,[1] seeking a declaratory judgment that it had no duty to defend or indemnify CTC because Torres was a CTC "employee" within the meaning of Scottsdale's policy, and was therefore excluded from coverage.[2]  After conducting a hearing, the district court granted Scottsdale's motion for summary judgment.[3] <u>Scottsdale Ins. Co.</u> v. <u>Carrabassett Trading Co.</u>, Inc., 460 F. Supp. 2d 251 (D. Mass. 2006) ("<u>Scottsdale I</u>").  Because we conclude that material facts remain in dispute, we must reverse the district court and remand for further proceedings.

---

[1]  Scottsdale named both CTC and Torres as defendants in the declaratory judgment action.  Although both defendants filed a Notice of Appeal, they agreed to allow Torres to prosecute the appeal on behalf of both.

[2]  The record reflects that Scottsdale is defending CTC in the underlying suit under a reservation of rights.

[3] During the hearing, CTC's counsel asked the court to treat the objection to Scottsdale's motion for summary judgment as a cross-motion for summary judgment.

# I. BACKGROUND

The facts recited here are undisputed unless otherwise noted. CTC is a fiber blending and recycling company. Its business involves baling up waste fiber from textile mills -- such as waste from carding machines[4] -- and selling the bales to, for example, felt manufacturers. CTC fills orders on an as-needed basis, resulting in inconsistent demand for its products. It has five permanent employees, two of whom are salaried and three of whom are paid hourly.

Venturi hires individuals and places them with client companies for varying lengths of time. During times of high product demand, CTC contacted Venturi to supplement its workforce. Venturi paid the supplied workers, withheld taxes from their paychecks, and took responsibility for workers' compensation insurance. While Venturi retained the right to hire, place, discipline and terminate its employees, CTC was responsible for training, supervision and assigning work tasks. In cases of unsatisfactory performance, CTC could ask the worker not to return to the job. Venturi profited by charging the client CTC a premium over and above the wage, tax, and workers' compensation insurance amounts it charged back to CTC.

Torres had been employed by Venturi or its predecessor since 2001. He was assigned to CTC in August 2003. Torres

---

[4] A carding machine is used to prepare fibers such as wool or cotton for use in finished textile products.

replaced a different Venturi employee who had been at CTC for about three weeks.  Torres worked regularly at CTC until early December 2003.  He was again assigned to CTC in mid-January 2004, and except for one week in June, worked regularly until August 2004, when his left arm was severed in an accident involving a wool-picking machine.  Torres worked a total of 1613 hours during these two tours of duty at CTC.  During roughly the same time span, five other Venturi employees placed at CTC worked between ten and 280 hours.  As a result of the accident, Torres sued CTC in Massachusetts state court.

At the time of Torres's accident, Scottsdale was CTC's liability insurer.[5]  Pursuant to the policy's "Bodily Injury and Property Damage Liability" section, Scottsdale agreed to "pay those sums that [CTC became] legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  The liability coverage is subject to an "Employer's Liability" exclusion, which, in relevant part, states that the insurance does not apply to "bodily injury to an 'employee' of the insured arising out of and in the course of . . . performing duties related to the conduct of the insured's business."

The policy also provides the following definitions:

5.   "Employee" includes a "leased worker."
     "Employee" does not include a "temporary worker."

_____

[5]  Coincidentally, Scottsdale's policy took effect the same day as Torres's accident.

> >       \*           \*           \*           \*

> > 10.   "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

> >       \*           \*           \*           \*

> > 19.   "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

The ultimate question here is whether Torres was a "leased worker," and thus excluded from coverage; or a "temporary worker," thus obligating Scottsdale to provide a defense in Torres's lawsuit.

## II. STANDARDS OF REVIEW

### A. Summary judgment

We review the district court's grant of summary judgment de novo. Specialty Nat'l. Ins. Co. v. One Beacon Ins. Co., 486 F.3d 727, 732 (1st Cir. 2007). The presence of cross-motions "'neither dilutes nor distorts this standard of review.'" Id. (quoting Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006)); see also Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004) ("Cross motions simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.").

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits

-5-

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." AGA Fishing Group Ltd. v. Brown & Brown, Inc., 533 F.3d 20, 23 (1st Cir. 2008); Fed. R. Civ. P. 56(c). The party with the burden of proof must provide evidence sufficient for the court to hold that no reasonable fact-finder could find other than in its favor. Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998). A dispute is "genuine" if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. Rodriquez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008). A fact is "material" if it has the potential of determining the outcome of the litigation. Id.

B. Insurance policy construction

The parties agree that Massachusetts law applies to this case. Accordingly, we begin with the unexceptional proposition that Scottsdale owes a duty to defend CTC if the allegations in the underlying lawsuit are reasonably susceptible to an interpretation that they state a claim covered by CTC's policy. Liquor Liab. Joint Underwriting Ass'n. of Mass. v. Hermitage Ins. Co., 644 N.E.2d 964, 967. (Mass. 1995). Conversely, there is no duty to defend a claim that is excluded from coverage. Metro. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 793 N.E.2d 1252, 1254 (Mass. App. Ct. 2003).

The interpretation of insurance contracts is generally a matter of law for the court. Home Ins. Co. v. Liberty Mut. Fire

Ins. Co., 830 N.E.2d 186, 188 (Mass. 2005). The court must "construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter." Jacobs v. U.S. Fid. & Guar. Ins. Co., 627 N.E.2d 463, 464 (Mass. 1994) (citing Johnson v. Hanover Ins. Co. 508 N.E.2d 845, 849 (Mass. 1987)). Where the words in the policy are not ambiguous, "they must be construed in their usual and ordinary sense." Id. Ambiguity exists when the policy language is susceptible to more than one meaning. Lumbermens Mut. Cas. Ins. Co. v. Offices Unlimited, Inc., 645 N.E.2d 1165, 1168 (Mass. 1995). Ambiguous policy terms are construed in favor of the insured. Hazen Paper Co. v. U.S. Fid. & Guar. Co., 555 N.E.2d 576, 583 (Mass. 1990). At the same time, however, ambiguity is not created simply because the parties offer different interpretations of the policy language. Lumbermens, 645 N.E.2d at 1168.

If a contract term is found to be ambiguous, and the court finds it necessary to rely on extrinsic evidence to resolve the dispute, then a question of fact appropriate for jury consideration may arise. See Preferred Mut. Ins. Co. v. Gamache 675 N.E.2d 438, 442 (Mass. App. Ct. 1997) (summary judgment vacated where intent to cause harm was at issue and genuine issue of material fact remained as to intoxicated insured's mental capacity), aff'd 686 N.E.2d 989 (Mass. 1997); see also Foisy v. Royal Maccabees Life Ins. Co., 356 F.3d 141 (1st Cir. 2004) (district court correctly submitted the question of parties' intent

to the jury). Finally, the insurer has the burden of proving that an exclusion applies. Allmerica Fin. Corp. v. Certain Underwriters at Lloyds, London, 871 N.E.2d 418, 425 (Mass. 2007).

### III. LEGAL ANALYSIS

While our ultimate resolution may differ, the district court's analysis and focus on the issues is both accurate and helpful. We therefore borrow liberally from that court's opinion, noting our disagreement at the appropriate juncture.

The insurance policy at issue in this case is a "comprehensive general liability" policy. Such policies are designed to "protect an insured employer for losses to third parties arising out of the operation of the insured's business." Scottsdale I, 460 F. Supp. 2d at 255; (citing Monticello Ins. Co. v. Dion, 836 N.E.2d 1112, 1113 (Mass. App. Ct. 2005)). Injuries to employees are typically excluded from coverage because employers are expected to have separate workers' compensation insurance. Id. In that vein, the Code of Massachusetts Regulations requires employee leasing agencies to have workers' compensation insurance for its employees. Id. (citing Home Ins. Co., 830 N.E.2d at 190)). Thus, the policy at issue here is typical in that it excludes "employees" from coverage, and considers "leased workers" to be "employees." Id.

Against this backdrop, Scottsdale is entitled to judgment if Torres was a "leased worker." The policy definition of "leased worker" has two parts: first, he must be "leased by a labor

-8-

leasing firm under an agreement between [CTC] and the leasing firm to perform duties related to [CTC's] business"; second, the category of "leased workers" does not include "temporary workers," which are defined, in relevant part, as workers "furnished to [CTC] . . . to meet seasonal or short-term workload conditions."

While there is no dispute that Torres was at CTC to "perform duties related to CTC's business," Torres first argues that the lack of a signed lease between CTC and Venturi forecloses the conclusion that Venturi was a "labor leasing firm" or that the agreement to place Torres was a "lease." The district court quickly -- and, in our view correctly -- disposed of these twinned arguments, concluding that "there is no requirement under the [Scottsdale] policy that the agreement be memorialized in writing or labeled as a 'leasing agreement.'" Scottsdale I, 466 F. Supp. 2d at 256. Nor does it matter that Venturi never used the term "lease," as the district court correctly found that Venturi fit the profile of a "labor leasing firm" in that it retained the rights and obligations of an employer -- including determining rate of pay, procuring workers' compensation insurance and processing payroll -- while the client company directed the employee's daily activities. Id. (citing Home Ins. Co., 830 N.E.2d. at 188-89). "In short, Torres was "'leased by a labor leasing firm under an agreement' between [CTC] and Venturi 'to perform duties related to the conduct of [CTC's] business.' He is therefore a 'leased

worker' . . . within the meaning of the first sentence of the exclusion." Id.

We turn next to the "exception to the exclusion," in the second part of the policy's "leased worker" definition, which excepts "temporary workers." To be considered a "temporary worker" -- and thus not an "employee" -- Torres had to have been "furnished to" CTC: 1) to substitute for a permanent employee on leave; 2) to meet seasonal workload conditions; or 3) to meet short-term workload conditions. The parties agree that Torres was not brought in as a substitute or to help with a seasonal workload demands. Thus, the issue boils down to whether Torres was "furnished" to "meet . . . short-term workload conditions."

At the outset, we eschew any reliance on the number of hours that Torres ended up working at CTC prior to his injury, or any comparison of Torres's hours to those of his fellow Venturi employees placed at CTC in the same time frame. We cannot illuminate this point any better than did the district court, so we recount that analysis here:

> A threshold question is whether the terms "seasonal" and "short-term" are to be measured at the time the agreement is made or at some point thereafter. For example, a worker might be supplied to meet an anticipated one-week shortage (and therefore be "short-term," as measured by the parties' expectations), but wind up working for three years (and therefore be "long-term," as measured by hindsight). The answer appears to lie in the words "furnished . . . to meet" in the "temporary worker" definition. The phrase "furnished . . . to meet" suggests that the reasonable

> expectations of the parties concerning workload conditions, as measured at the time the employee is "furnished," governs whether the employee fits within either the "seasonal" or "short-term" category. Thus, even if the duration of a worker's assignment ends up being lengthy, he or she will still be considered a "temporary worker" if the parties reasonably intended for him or her to fulfill a short-term workload condition. Likewise, a worker will not be considered "temporary" if the parties reasonably intended for him or her to help with a long-term or permanent workload condition, even if the assignment is cut short. [footnote omitted]

Scottsdale I at 257.

As the district court correctly noted, the policy does not define "short-term." Id. at 258. The district court then concluded that the modifier "'short-term' suggests a period of time that is relatively brief and relatively finite." Id. Recounting that CTC's president offered deposition testimony that Torres was to stay at CTC for as long as he was needed, and a Venturi manager's testimony that Torres was assigned to CTC "indefinitely," the court essentially concluded that "indefinite" and "short-term" are mutually exclusive. Id. Based on this reasoning, the court held that Torres was not a "temporary worker," and thus his claim was not covered by the policy. Id.

Here we part company with the district court's analysis. As noted, "short-term" is not defined in the policy, other than its use as a modifier for "workload conditions." While undefined words are to be construed in accordance with their plain and ordinary

-11-

meaning, they are to be strictly construed against the insurer. Interstate Gourmet Coffee Roasters, Inc. v. Seaco Ins. Co., 794 N.E.2d 607, 612 (Mass. App. Ct. 2003) (citing Preferred Mutual, 686 N.E.2d at 990-91). In this light, and "as applied to the subject matter," Jacobs, 627 N.E.2d at 464, we do not view Torres's "indefinite" placement as necessarily incompatible with the possibility that he was addressing a "short-term workload condition." Indeed, CTC's president testified that CTC's workload fluctuated and that times of heavy workload required additional help. He also agreed that Torres was brought in "just to meet what [CTC's] workload was at the time." (emphasis added).

While our conclusion that an "indefinite" arrangement may address "short-term conditions" necessarily forecloses summary judgment for Scottsdale, Torres also argues that the phrase "short-term" is ambiguous because "short-term conditions" can extend for varying lengths of time, and thus an insured can never know whether it is covered. This ambiguity, the argument goes, must be construed against Scottsdale, and thus warrants reversal of the district court and entry of summary judgment for Torres. Based on the record before us, however, we do not believe that appellant is entitled to summary judgment either. Our reasoning follows.

During the summary judgment hearing, the district court posed the question of whether any further factual determination was necessary. CTC's position was "there is a genuine issue of material fact whether or not Mr. Torres was fulfilling a short-term

-12-

workload need . . . . Which would bring . . . issues of fact as to this industry, what is a normal workload . . . ." And although counsel for Scottsdale argued that the record was sufficient for the court to make the decision in Scottsdale's favor, he also acknowledged that the record was bare as to CTC's intent in using Torres. He concluded, "I don't think the record tells us anything. I don't think a trial tells us anything about that either." We agree that the record is insufficient. We do not agree that further factual development would be futile.

In our view, the nature of CTC's workflow and how Torres's placement fit within its ordinary course of business are among the critical -- but unresolved -- factual issues necessary to determine whether Torres was "furnished" to meet "short-term workload conditions." Accordingly, neither side is entitled to summary judgment, and we must remand this case for resolution of that issue. Consistent with this approach, on other occasions we have noted with approval a district court's use of a trial to resolve a disputed issue of fact in an insurance policy dispute. Foisy, 356 F.3d at 148. Other courts have done the same. See, e.g., In re So. La. Sugars, Coop., Inc., 485 F.3d 291, 293 (5th Cir. 2007) (case remanded where record demonstrated fact issue as to whether injured worker was "leased worker"); Pac. Employers Ins. Co. v. Wausau Bus. Ins. Co., 508 F. Supp. 2d 1167 (M.D. Fla. 2007) (summary judgment denied and trial ordered to resolve dispute over nature of work and tenure of injured worker in order to resolve

-13-

"short-term" question).[6]  As Fed. R. Civ. P. 56 makes clear,
summary judgment is appropriate only when a movant is entitled to
judgment as a matter of law.  On the current record, neither side
is so entitled.

The judgment of the district court is **vacated**.  The case
is **remanded** for proceedings consistent with this opinion.  Costs
are awarded to appellant Raul Torres.

---

[6]  At the subsequent trial in <u>Wasau</u>, the district court, relying
heavily on <u>Scottsdale I</u>, found for the insurer. <u>Pac. Employers Ins.
Co.</u> v.
<u>Wausau Bus. Ins. Co.</u>, 2007 WL 2900452 (M.D. Fla. Oct. 2, 2007).
The extent of the details set forth in the trial court's findings
of fact and ruling of law is further support for our conclusion
that the instant record is lacking.