CENTRAL MUTUAL INSURANCE COMPANY *vs.* TRUE PLASTICS,
INC., & another.[1]

No. 12-P-439.

Worcester. January 14, 2013. - July 10, 2013.

Present: CYPHER, RUBIN, & WOLOHOJIAN, JJ.

*Insurance,* General liability insurance, Insurer's obligation to defend, Coverage.
   *Indemnity. Practice, Civil,* Presumptions and burden of proof. *Words,*
   "Temporary worker."

In a civil action by an insurer seeking a judgment declaring that it owed no
   duty to its insured under a commercial general liability insurance policy
   (policy) for injuries incurred by a worker who was not an employee of the
   insured, the insured met its burden of proving that the worker had been
   furnished to meet a short-term increase in the insured's workload and was
   therefore a covered "temporary worker" within the meaning of the policy.
   [21-25]

CIVIL ACTION commenced in the Superior Court Department on
September 5, 2006.

The case was heard by *Douglas H. Wilkins,* J.

*Richard W. Jensen* (*William A. Schneider* with him) for the
plaintiff.

*Paul F. Leavis* for Marciala Sanchez.

WOLOHOJIAN, J. At issue is whether a worker supplied to an
insured by a labor leasing firm was "furnished . . . to meet
. . . short-term workload conditions" such that she was a
"temporary worker" within the meaning of the commercial
general liability (CGL) insurance policy issued by the insurer,
Central Mutual Insurance Company (Central Mutual), to the
insured, True Plastics, Inc. (True Plastics). We agree with the
trial judge's determination that the particular worker at issue in
this case was furnished to meet short-term workload conditions

---

[1]Marciala Sanchez.

and, therefore, that she was a "temporary worker" within the meaning of the policy. A worker is a "temporary worker" within the meaning of the policy if the insured holds (at the time the worker is furnished) an objectively reasonable expectation that the worker is furnished to meet a short-term workload condition. We reject Central Mutual's argument that a short-term workload condition must necessarily be of finite duration.

*Background.* Marciala Sanchez was injured on October 14, 2004, while operating a molding machine at True Plastics. Sanchez was not an employee of True Plastics; she had been assigned to True Plastics by an employment agency, Dynamic Staffing, Inc.[2] Because of the accident, Sanchez made a claim for, and received, workers' compensation benefits under Dynamic Staffing's workers' compensation insurance policy. As was her right (and as contemplated under the workers' compensation scheme, G. L. c. 152, § 15[3]), she also sued True Plastics to recover for her injuries. True Plastics sought indemnification and a defense from Central Mutual, which brought the underlying action seeking a judgment declaring that it owed no duty under its CGL policy.[4]

In essence, Central Mutual's position is that Sanchez was a leased employee (excluded under the policy), rather than a temporary employee (included under the policy). The parties submitted the case for decision as a "case stated"[5] on a documentary record including written stipulations, deposition

---

[2]Sanchez was employed by Dynamic Staffing, which was responsible for paying her and for withholding workers' compensation and other taxes from her pay.

[3]Any amounts recovered by Sanchez in such an action go first to repay the insurer, and Sanchez is only entitled to receive any excess. G. L. c. 152, § 15. In this way, the statutory scheme guards against duplicate recovery by the injured employee.

[4]True Plastics counterclaimed, seeking a declaration that Central Mutual owed a duty to defend and indemnify with respect to Sanchez's claim.

[5]Whether this was, precisely speaking, a "case stated" is debatable. Among the documentary materials submitted to the trial judge were deposition transcripts, the substance of which was not stipulated or otherwise agreed to. See, e.g., *Caissie* v. *Cambridge*, 317 Mass. 346, 347 (1944) ("The statement of agreed facts contains all the material facts upon which the rights of the parties are to be determined in accordance with the law. It thus constituted a case stated"). Indeed, summary judgment had previously been denied on the ground that factual issues remained concerning whether Sanchez was a leased worker

transcripts, answers to interrogatories, affidavits, and exhibits. In this posture, our appellate review gives no deference to the trial judge's findings, and we are free to draw our own conclusions.[6] See *Ranger Ins. Co.* v. *Air-Speed, Inc.*, 9 Mass. App. Ct. 403, 406 n.10 (1980); *Guempel* v. *Great Am. Ins. Co.*, 11 Mass. App. Ct. 845, 848 (1981). Our independent review of the record discloses the following.

True Plastics is a manufacturer of made-to-order plastic components. It does not carry an inventory of its own; rather, it creates custom items in response to specific orders. One of its regular customers was Flexhead Industries, Inc. (Flexhead), which placed an order for 4,000 plastic pieces around September 20, 2004.[7] This order was almost three times larger than any previous order Flexhead had placed with True Plastics. The pieces were to be delivered on a rolling basis as they were completed.

Once price and other terms of the order were finalized, David True (the owner of True Plastics) assessed whether his workforce could complete the order on its own or whether additional workers were required.[8] Given the fluctuating nature of True Plastics's business and the fact that it could not control the timing of its customers' orders, the company regularly turned to staffing agencies when its own workforce did not suffice.[9]

True did not believe that the Flexhead order could be completed using his own employees because they were already fully occupied filling other large orders. He therefore called Dynamic Staffing and requested a temporary worker for the Flexhead order. True estimated that it would take this one worker six or

---

or a temporary worker. Nonetheless, the parties agreed to submit the case for decision based on the documentary evidence, apparently willing to permit the trial judge to resolve any factual conflicts or tensions as he saw fit. Neither side objected below, or now on appeal, to the procedure employed.

[6]That said, we acknowledge the Superior Court judge's thoughtful, lucid, and detailed analysis and factual findings. Although we draw our own independent conclusions, we note that they largely mirror those of the trial judge.

[7]The written purchase order was dated September 24, 2004.

[8]True Plastics had eleven full-time employees and two part-time employees.

[9]True Plastics used labor staffing companies in 2001, 2002, 2003, and 2004, sometimes on a weekly basis. The longest time period a temporary worker had been placed at True Plastics was five or six months. In 2004, True Plastics used temporary workers every month, ranging from a low of 211 hours one month to 547.5 hours in October, the month in which Sanchez was injured.

seven weeks to complete the Flexhead order, but he did not disclose this estimate to Dynamic Staffing. True and Dynamic Staffing both simply understood that the worker would be assigned to True Plastics for an indefinite period until she was no longer needed.

Sanchez arrived at True Plastics on September 27, 2004, and she worked as a machine operator on other projects for a few days while she was trained and while waiting for the raw materials for the Flexhead order to arrive. Once the materials arrived, Sanchez worked exclusively on the Flexhead order until she was injured about three weeks later. By that time, Sanchez had completed nearly one-half of the Flexhead order, which was entirely consistent with True's estimate of how long the job would take. Because Sanchez was injured, True Plastics could not finish the remainder of the order, and it lost Flexhead as a customer.

True Plastics was insured by Central Mutual under a CGL policy that, subject to various exclusions, provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury.' " At issue in this case is the "Employer's Liability" exclusion in Section I of the policy. That provision excludes coverage for any employer liability for bodily injury to "[a]n 'employee' of the insured" arising out of the course of his or her employment. To determine whether a person is an "employee" for purposes of the exclusion, one must turn to the "Definitions" section (Section V) of the policy. Section V provides:

> " 'Employee' includes a 'leased worker.' 'Employee' does not include a 'temporary worker.' "

A "leased worker" is defined as

> "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker.' "

A "temporary worker" is

> "a person who is furnished to you to substitute for a

permanent 'employee' on leave or to meet seasonal or short-term workload conditions."

*Discussion.* "The interpretation of an insurance contract and the application of policy language to known facts present questions of law" for the courts to decide. *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 394 (2003). We "construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter." *Jacobs* v. *United States Fid. & Guar. Co.*, 417 Mass. 75, 76 (1994). When the words of the policy are not ambiguous, "they must be construed in their usual and ordinary sense," *id.* at 77, quoting from *Hanover Ins. Co.* v. *Ramsey*, 405 Mass. 1101, 1101 (1989), taking into account "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 798 (2000), quoting from *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 285 (1997).

The insurance policy at issue in this case is a CGL policy designed to "protect an insured employer against liability for losses to third parties arising out of the operation of the insured's business." *Monticello Ins. Co.* v. *Dion*, 65 Mass. App. Ct. 46, 47 (2005). "Injuries to employees are typically excluded from coverage . . . as the expectation is that the employer will have in place workers' compensation insurance (or self-insurance) in one of the forms made compulsory by G. L. c. 152, § 25A." *Ibid.* "Unlike the 'leased worker,' for whose benefit workers' compensation insurance was reliably maintained by the general employer (the labor-leasing agency), it is possible that the 'temporary worker' exception to the general exclusion of coverage for employees may have been intended as gap coverage to protect the special employer (i.e., the CGL insured) where the furnishing employer may lack coverage." *Id.* at 49-50. "It appears that [the Insurance Services Office, Inc. (ISO),] added the definitions of 'employee,' 'leased worker,' and 'temporary worker' in 1993 to 'cover the nontraditional employment relationship where a client company is using the services of employees of a staffing company.' " AMCO Ins. Co. *vs.* Dorp-

inghaus, U.S. Dist. Ct., No. 05-1296, slip op. at note 4 (D. Minn. Jan. 12, 2007), quoting from *American Family Mut. Ins. Co.* v. *Tickle*, 99 S.W.3d 25, 30 (Mo. Ct. App. 2003). See *General Agents Ins. Co. of America, Inc.* v. *Mandrill Corp.*, 243 Fed. Appx. 961, 967 (6th Cir. 2007).

The parties agree that if Sanchez was a "temporary worker" as defined by the policy, i.e., a person furnished to meet short-term workload conditions, then Central Mutual is required to defend and indemnify True Plastics.[10] The parties also agree that if Sanchez was not furnished to meet short-term workload conditions, then she was a "leased worker" and no coverage is afforded under the CGL policy. They part ways, however, over who has the burden of proof and whether Sanchez was furnished to meet short-term workload conditions. We address each issue in turn.

"An insured bears the initial burden of proving that the claimed loss falls within the coverage of the insurance policy. Once the insured does this, the burden then shifts to the insurer to show that a separate exclusion to coverage is applicable to the particular circumstances of the case. Finally, where the insured seeks to establish coverage through an exception contained within an exclusion to coverage, the burden shifts back to the insured to prove coverage for the claimed loss." *Boazova* v. *Safety Ins. Co.*, 462 Mass. 346, 351 (2012) (citations omitted).

Central Mutual does not dispute that it bears the burden of establishing that the policy's "Employer's Liability" exclusion applies. That burden includes proving that Sanchez was an "employee" within the scope of the exclusion, see *Hanover Ins. Co.* v. *Talhouni*, 413 Mass. 781, 785 (1992), which in turn requires that Central Mutual demonstrate that Sanchez satisfies the definition of "employee" contained in the "Definitions" section of the policy. The Manichean definition of "employee" has two parts, one negative and one positive. The positive proposition states that "leased workers" are employees for purposes of the CGL policy. Because this provision expands the

---

[10]It is undisputed that Sanchez did not substitute for a permanent employee, nor was she furnished to meet a seasonal workload condition. Accordingly, the only way Sanchez can be a "temporary worker" is if she was furnished to meet a short-term workload condition.

universe of persons excluded from coverage, the insurer has the burden of proving that a person falls within its scope. The negative proposition operates in the opposite way; it carves out an exception from the universe of persons excluded from coverage. Put differently, it extends coverage to persons who are "temporary workers." We have previously construed this provision as the " 'temporary worker' exception to the policy's otherwise general exclusion of coverage for accidents to employees." *Monticello Ins. Co.* v. *Dion,* 65 Mass. App. Ct. at 49. See *Scottsdale Ins. Co.* v. *Torres,* 561 F.3d 74, 78-79 (1st Cir. 2009) (*Scottsdale II*) (referring to "temporary worker" as an "exception to the exclusion"). So construed, True Plastics bears the burden of establishing that Sanchez was a "temporary worker," in other words, that she was furnished to meet short-term workload conditions.

The phrase "short-term workload condition" is undefined and "is a relative term [that] can include a wide variety of temporal periods." Perlmutter, The Law of "Leased Worker" and "Temporary Worker" under a CGL Policy, 45 Tort Trial & Ins. Prac. L.J. 761, 793 (2010). If assessed against the facts retrospectively (i.e., from the point in time when the accident occurred), the phrase is ambiguous. See *Bituminous Cas. Corp.* v. *Mike Ross, Inc.,* 413 F. Supp. 2d 740, 745 (N.D. W. Va. 2006); Perlmutter, *supra* at 788. See also *Pacific Employers Ins. Co.* v. *Wausau Bus. Ins. Co.,* 508 F. Supp. 2d 1167, 1176 (M.D. Fla. 2007) ("short-term" is ambiguous). If assessed prospectively, i.e., from the time the worker is furnished, then the phrase is not ambiguous because it only requires a factual inquiry into the reasonable expectation of the insured at the time the worker was furnished. See *Scottsdale Ins. Co.* v. *Carrabassett Trading Co.,* 460 F. Supp. 2d 251, 257 (D. Mass. 2006) (*Scottsdale I*), vacated and remanded on other grounds, 561 F.3d 74 (1st Cir. 2009).[11] Like the United States Court of Appeals for the

---

[11]Other jurisdictions have divided on whether the "temporary worker" definition is ambiguous, but these cases have turned on the construction of the "furnished to" language, which is not at issue here. See *General Agents Ins. Co. of America, Inc.* v. *Mandrill Corp.,* 243 Fed. Appx. 961, 967 (6th Cir. 2007) ("furnished to" is unambiguous); *Parra* v. *Markel Intl. Ins. Co.,* 300 Fed. Appx. 317, 319 (5th Cir. 2008) ("furnished to" is unambiguous); *North-*

First Circuit, we turn to the Federal District Court's analysis to illuminate the point:

> "A threshold question is whether the terms 'seasonal' and 'short-term' are to be measured at the time the agreement is made or at some point thereafter. For example, a worker might be supplied to meet an anticipated one-week short-age (and therefore be 'short-term,' as measured by the parties' expectations), but wind up working for three years (and therefore be 'long-term,' as measured in hindsight)."

*Scottsdale II*, 561 F.3d at 79, quoting from *Scottsdale I*, 460 F. Supp. 2d at 257. We see no reason to employ an analytical viewpoint that will result in an ambiguity in the policy language. We therefore hold that the phrase "short-term workload condition" is to be assessed prospectively from the time the worker was furnished. Even if a worker's assignment ends up being lengthy, he or she will still be a "temporary worker" within the meaning of the policy, provided the insured held an objectively reasonable expectation at the time that the worker was furnished to meet a short-term workload condition.

Central Mutual argues that "short-term" workload conditions cannot be "indefinite," but we disagree. A short-term workload condition need not necessarily be of finite duration. "[W]e do not view [Sanchez's] 'indefinite' placement as necessarily incompatible with the possibility that [she] was addressing a 'short-term workload condition.' " *Scottsdale II*, 561 F.3d at 79.

With this legal framework in mind, it is clear that True Plastics has met its burden of proving that Sanchez was furnished to meet a short-term increase in True Plastics's workload caused by the Flexhead order, and was therefore a "temporary worker"

land Cas. Co. v. *Meeks*, 540 F.3d 869, 875 (8th Cir. 2008) ("furnished to" is unambiguous); AMCO Ins. Co. *vs.* Dorpinghaus, U.S. Dist. Ct., No. 05-1296, slip op. at 5 (D. Minn. Jan. 12, 2007) ("furnished to" is unambiguous); *Empire Fire & Marine Ins. Co.* v. *Jones*, 739 F. Supp. 2d 746, 763 (M.D. Pa. 2010) ("furnished to" is unambiguous); *Nationwide Mut. Ins. Co.* v. *Allen*, 83 Conn. App. 526, 540 (2004) ("furnished to" is unambiguous); *National Indem. Co. of the South* v. *Landscape Mgmt. Co.*, 963 So. 2d 361, 364 (Fla. Ct. App. 2007) ("furnished to" is ambiguous); *Mendenhall* v. *Property & Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 94 (Mo. 2012) ("furnished to" is ambiguous); *Borntreger* v. *Smith*, 340 Wis. 2d 474, 480 (Wis. Ct. App. 2012) ("furnished to" is unambiguous).

under the CGL policy. David True's assessment that an additional worker, working five to six weeks, was needed to complete the Flexhead order was objectively reasonable. The order was unusually large, True Plastics's own employees were fully occupied filling other large orders, Sanchez completed one-half of the order in three weeks, and True Plastics was unable to complete the order after Sanchez was injured. Once the necessary raw materials arrived, Sanchez worked exclusively on the Flexhead order. The fact that True Plastics had a regular practice of meeting its fluctuating workflow with temporary employees does not mean that the Flexhead order was anything other than a "short-term workload" condition or that Sanchez was furnished for any reason other than meeting that short-term condition.

*Judgment affirmed.*