The plaintiff, representing himself, filed a complaint against United Services Automobile Association alleging breach of contract, breach of the covenant of good faith, negligence, and violations of G. L. c. 93A. The defendant moved for summary judgment. A Superior Court judge allowed the defendant's motion and denied the plaintiff's subsequent motion for reconsideration. On the plaintiff's appeal, we affirm.
Background. We summarize the relevant facts, reserving additional facts for later discussion.[2] The plaintiff's home suffered serious damage in a fire on April 26, 2012. At the time of the fire, the home was insured by the defendant. The insurance policy terms provided coverage due to fire loss to the dwelling, other structures, and the contents of the home up to specified policy limits. Coverage for the dwelling itself was capped at $243,000. In accordance with the applicable statute, the policy provided for payment of the "actual cash value" of the damage after deduction of depreciation to the building and a $500 deductible. See G. L. c. 175, § 99, Twelfth A.
After the plaintiff provided notice of the fire, the defendant inspected the property. The day after the fire occurred, the defendant sent an adjuster to the property to estimate the damage to the home. Following the adjuster's inspection, the defendant determined that the estimated value to repair the damage to the home was $249,475.88. The defendant determined that the depreciation of the building was $65,315.87, and paid the "actual cash value" to the plaintiff, $183,660.01, within ten days of the appraisal of the damage.[3]
The plaintiff was unhappy with the amount offered. He maintained that the damage appraisal was too low and that the defendant should have declared his house a total loss. He also contended that the house was underinsured, and he faulted the defendant for not automatically adjusting the insurance coverage over the years to account for rising property values. It is undisputed that at the time the plaintiff initially contested the amount that the defendant offered, he had not hired an independent adjuster to assess the damage or a contractor to prepare a damage estimate. Four years later, he did hire three individuals who submitted affidavits that were critical of the defendant's appraisal of the damage. However, even then, these three affiants did not provide their own calculations of how much it would have cost to repair the home. Nor did they state that the house needed to be razed.
Discussion. "In considering a motion for summary judgment, the court does 'not pass upon the credibility of witnesses or the weight of the evidence [or] make [its] own decisions of fact.' " Attorney Gen. v. Bailey, 386 Mass. 367, 370 (1982), quoting from Hub Assocs., Inc. v. Goode, 357 Mass. 449, 451 (1970). "A party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to Mass. R. Civ. P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). After reviewing the record on summary judgment, and taking the facts in the light most favorable to the plaintiff, we affirm the judgment.
The arguments that the plaintiff seeks to raise in his discursive appellate brief are difficult to discern. Most of the arguments fail to rise to the level of adequate appellate argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and could be rejected on this basis alone. See Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011). See also Maza v. Commonwealth, 423 Mass. 1006, 1006 (1996) (litigant "acting pro se ... is held to the same standards as litigants who are represented by counsel"). Nevertheless, we briefly address what we take to be the plaintiff's main contentions.
As noted, the plaintiff contends that his property was underinsured, for which he faults the defendant. Putting aside potential problems with the plaintiff's proof that the property was underinsured,[4] he has not shown how that would support a claim against the defendant. To the contrary, the insurance policy here expressly states that "[i]t is [the homeowner's] responsibility to determine and maintain adequate amounts of insurance to totally replace or repair [the insured] dwelling." Based on that unequivocal language, the plaintiff's efforts to build a legal claim based on his underinsurance theory fail as a matter of law. See Central Mut. Ins. Co. v. True Plastics, Inc., 84 Mass. App. Ct. 17, 21 (2013), quoting from Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003) (" 'The interpretation of an insurance contract and the application of policy language to known facts present questions of law' for the courts to decide").
The plaintiff also contends that the defendant should have declared his property a total loss. It is not clear to us how this, if proven, materially would assist the plaintiff in light of the coverage limits in the policy. In any event, he has not made a sufficient showing of a triable issue on this point. The plaintiff's experts do not opine that the house should have been declared a total loss, and all that supports his claim are his own conclusory statements to that effect. Such statements are not sufficient to create a "genuine issue as to [a] material fact" necessary to defeat summary judgment. Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). Cf. Doe v. American Guar. & Liab. Co., 91 Mass. App. Ct. 99, 105 (2017).
Although the plaintiff claims that he did not receive the full cost of repair for his home, he again has not provided adequate support for that claim nor demonstrated how the defendant violated the terms of the policy (be they express terms in the policy or the implied covenant of good faith and fair dealing) in appraising the loss as it did. The defendant indisputably acted promptly in responding to the claim and utilized the pay-out formulas set forth in the policy. For example, although the plaintiff claims that the defendant erred by applying a "holdback" of $65,315.87 (based on the house being seventy-three years old and not having been updated beyond a closed-in porch),[5] the language of the policy expressly allows such a practice.[6] The policy clearly sets out the requirements for the appraisal of damage to the property and the procedure for the plaintiff to receive the full amount of the appraised damage. The record demonstrates that the defendant complied with the procedural requirements of the policy. Although the plaintiff claims that the appraisal should have been higher, his experts did not even state what they thought the value should have been. Under these circumstances, the judge did not err in allowing the defendant's motion for summary judgment.
Finally, we address the plaintiff's contention that the judge erred by considering an expert affidavit submitted by the defendant. The plaintiff argues that this affiant should not have been considered an expert because his State construction supervisor license temporarily had lapsed as of the date he executed his affidavit. However, it is undisputed that the affiant had been in the construction industry for eighteen years and that he specialized in fire damage restoration and reconstruction services for insurance claims. Accordingly, there was a basis on which the judge could credit his expertise. To the extent that the plaintiff asserts that the judge should not have allowed the substitution of this affiant for a different one, the judge had ample discretion to address such issues and acted well within it. Cf. Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 485 (2000) ("[W]e know of[ ] no case in which a trial judge's discretionary admission ... of belatedly offered and previously unidentified expert testimony has been reversed by our appellate courts, notwithstanding any violation of discovery obligations or pretrial orders"); Mattoon v. Pittsfield, 56 Mass. App. Ct. 124, 131 (2002) ("Trial judges have broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial .... Within this discretion lies the power to exclude or deny expert testimony" [quotation omitted] ). Finally, the judge's summary judgment ruling does not actually depend on his crediting the defendant's expert. Rather, it turned on the language of the policy and the plaintiff's own failure of proof.[7]
Judgment affirmed.

In reviewing the allowance of a motion for summary judgment, we examine the evidence in the record de novo, view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmoving party. Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016).

The defendant also paid the plaintiff for his additional living expenses (at the policy limit applicable to loss of use claims), removal of debris from the property, asbestos remediation, and the damage to the home's contents (again, at the policy limit).

None of the plaintiff's experts opined that his house was underinsured. Rather, the plaintiff relied on figures generated by a Web site, SwiftEstimator.com, which purports to provide estimates of appropriate insurance coverage.

The plaintiff does not dispute that the full amount of the holdback, $65,315.87, would have been paid to him had he provided evidence of completion of the repairs within two years of the fire (in which case he would have received a total that exceeded the $243,000 limit on dwelling coverage). In April, 2014, the plaintiff sought an eight-month extension to remove contents from the home. In the event of a total loss of the property, the policy allowed for a potential extension of 180 days to provide evidence of the repairs. The plaintiff did not initiate any such repairs, and he has not demonstrated a triable issue on whether the defendant's denial of the 180-day extension amounted to a violation of the covenant of good faith and fair dealing.

The language at issue was approved by the Commissioner of Insurance and contained in an endorsement appended to the policy by a rider. See G. L. c. 175, § 99, Fourth ("[T]he commissioner shall require any provision which in his opinion modifies the contract of insurance in such way as to affect the question of loss to be appended to the policy by a slip or rider as hereinafter provided"); G. L. c. 175, § 99, Twelfth A ("[T]he commissioner may approve for use in the commonwealth a provision which changes the loss settlement clauses of the standard policy which requires coverage to the extent of actual cash value. Such changes must provide a reasonable, clearly specified coverage definition, and may be equivalent to, greater than or less than actual cash value").

The plaintiff's brief raises a number of other passing arguments, such as his contention that, after the litigation began, the defendant violated a "good faith obligation to answer" to the plaintiff "without the formality of interrogatories." These arguments "have not been overlooked. We find nothing in them that requires discussion." Departmentof Rev. v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004) (quotation omitted). We additionally note that the plaintiff does not raise any issues with regard to some of his claims in the trial court, such as his claim that the defendant violated G. L. c. 93A. Any such issues have been waived. See Mass.R.A.P. 16(a)(4).